THE STATE, EX REL. CATALAND ET AL., APPELLANTS, *v.* BIRK ET AL., APPELLEES.

300

■■■■■■■■■

■■■■■■■■■■

(No. 3614—Decided October 28, 1953.)

■■■■■■■■■

*Mr. Edward Roberts, Mr. Eugene P. Brown* and *Mr. John H. Oesch,* for appellants.
*Mr. Paul Van Such,* for appellees.

PHILLIPS, J. On January 27, 1949, relators purchased Campbell city outlot number 48, which faces 79.05 feet on Coitsville Road and extends back along Twelfth Street a distance of 122.38 feet, and adjoining Campbell city lot number 5001, which faces 70 feet on Twelfth Street and has a depth of 44.82 feet on its north line and 55.72 feet on its south line, which two parcels of land form a complete tract of land situated on the northeast corner of Coitsville Road and Twelfth Street in the city of Campbell, Mahoning County, Ohio.

At the time of such purchase by relators a residence was situated on outlot number 48, the occupants of which and their predecessors in title had used a one-story frame garage situated on Campbell city lot number 5001 for more than 20 years.

A Campbell city zoning ordinance, which became effective on October 31, 1950, provides, among other things, that no building shall be erected on any lot facing on Twelfth Street closer than fifty feet from that street.

On June 29, 1951, relator, Louis Cataland, applied for a permit to erect a garage, he claims, on the site

of the garage then situated on Campbell city lot number 5001.

The Campbell city building inspector issued a permit for the erection of a garage on outlot 48 instead of, as relators claim, on Campbell city lot 5001 for which he applied. Relator proceeded to raze the old garage, and erect on a part of the foundation thereof a two-story garage on Campbell city lot 5001. On October 23, 1951, when the new garage was partially completed the building inspector ordered the construction thereof halted on the ground that a two-story instead of a one-story garage was being built thereon, which second story subsequently was removed.

On October 29, 1951, the building inspector ordered relators to raze and remove such garage from Campbell city lot 5001 within fifteen days or face arrest for violation of the Campbell city zoning ordinance and violation of the permit issued for the construction of the garage on outlot number 48.

Again, by letter dated February 26, 1952, the building inspector ordered relators to raze and remove the garage from Campbell city lot 5001 within thirty days because it was being erected less than fifty feet from Twelfth Street or face arrest for violation of the Campbell city zoning ordinance.

On appeal to the Planning Commission of the City of Campbell, in which relators urged that the building inspector erred in issuing a permit for the erection of such garage on outlot 48 instead of Campbell city lot 5001 and in refusing to issue a permit to build a garage on Campbell city lot 5001, the commission denied their appeal on June 2, 1952.

Thereafter relators filed an action in mandamus in the Court of Common Pleas seeking to compel the Planning Commission of the City of Campbell and the building inspector thereof to issue a permit to them

for the erection of a garage on Campbell city lot 5001 on the site of the former garage, which relief that court denied them on June 6, 1953, and entered judgment accordingly. Relators appealed from that order to this court on questions of law.

By assignments of error relators contend that "the court below erred in finding that Mr. Birk, the building inspector, did not commit an error in issuing a building permit for outlot 48 instead of lot 5001," and in "holding that the zoning regulations of the city of Campbell do not impose an unreasonable restriction upon lot 5001."

Relators contend that the "denial of a building permit for a garage on lot 5001 has no relation to the public health, safety, morals or general welfare," to which a restriction of a zoning ordinance must relate, and "is an arbitrary and unreasonable restriction on the use of lot 5001 by appellants"; that "the city planning commission has the power in cases of practical difficulty or unnecessary hardship to permit exceptions to and variances from the zoning ordinance"; and that "where there has been an abuse of discretion by the city planning commission a court may grant relief"; and finally, that "each case must be considered in connection with the particular facts, circumstances and conditions surrounding it."

While not contending that the set-back requirements of the Campbell city zoning ordinance are invalid generally, relators urge that when the set-back requirements are applied to the particular facts of the case we review it results in depriving them of the right to the full use of their property.

Respondents contend:

"1. That Mr. Birk, the building inspector, did not commit an error in issuing a permit for outlot No. 48 instead of lot No. 5001.

"2. That the  ̉uilding inspector could not issue a permit for lot No. 5001 for to do so would be in contravention of the Campbell zoning ordinance which establishes a 40-foot set back restriction.

"3. That the Campbell zoning ordinance does not impose an unreasonable restriction upon lot No. 5001 and is a valid and constitutional exercise of the city's police powers."

Relator testified:

"Q. Mr. Cataland, I shall ask you if last summer sometime in the month of July, I believe, you decided to put up a new garage on your place? A. Yes.

"Q. Did you go down to the inspector's office, building inspector's office, in the city of Campbell to get a permit? A. Yes.

"Q. What did you tell the inspector? A. I told him I want to tear down old garage in the place and put a new garage.

"Q. What did he say? A. He told me to tear it down, lots of complaints for that garage there, tear it down.

"Q. When you talked to him did you tell him where you were going to build it? A. Yes, sir.

"Q. Where did you tell him? A. Where the old garage was.

"Q. The same place where the old garage was? A. Yes.

"Q. Did he appear to know where the old garage was? A. He said he know all about it.

"Mr. Van Such: Objection.

"The Court: Objection sustained as to the form of the question; it calls for a conclusion.

"Q. Did he indicate to you by words or by action that he knew where the old garage was? A. Yes.

"Q. How did he do that, Mr. Cataland?

" * * *

"Q. This permit was given for outlot 48, was it not, according to this permit? A. I didn't know until after and I found that out.

"Q. So in spite of the building permit you say you did not know and you proceeded to construct a garage on lot No. 5001 where the old one was? A. Yes.
" * * *

"Q. Will you tell me how much time elapsed between the time you got this permit on June 29th, 1951, for outlot 48 and the time you applied for a building permit on 5001? A. After the trouble started.

"Q. In other words, you had your garage already there and then you applied for it and all these requests were made to tear down the garage that you applied for a new permit on 5001? A. Yes.
" * * *

"Q. What condition was the old garage at the time you tore it down, were you able to use it?

"Mr. Roberts: He has already testified that it was repairable.

"A. If I can repair, I can repair it, but they tell me to tear it down and I tear it down.

"Q. Would you have built a new garage anyhow, Mr. Cataland, if somebody had not told you to tear it down; in other words, were you able to use it for your purposes? A. Yes.

"Q. Would you have still built a new garage and torn it down because of its condition?
" * * *

"A. No, I wouldn't tear it down; let it stay there.

"Q. Mr. Cataland, you say you would not have torn it down and yet the new one that you built was for two cars, is that correct? A. I get permit for two cars."

The building inspector testified:

"A. He asked for a permit for a garage and I told him that I would give him a permit and I did so. I

asked him what the lot number was and I said, is it where the house is, and he said it is on that lot and I took the number off of the tax receipt, the lot number, O. L. 48.

"* * *

"Q. After that did he say anything? A. He didn't say nothing; went away and everything was all satisfactory.

"Q. You gave him a written permit? A. Yes.

"Q. Did he tell you at that time that you made an error, you should have given the permit for Lot No. 5001? A. No, sir."

As far as the evidence discloses the permit issued on outlot 48 is still in full force and effect, and there is ample room to build a garage of the same size as the old one on that portion of relators' land.

Under the evidence submitted the questions presented for our consideration are whether the use of relators' land is unreasonably restricted by their being denied the right by permit to erect a new garage on Campbell city lot 5001 on the site of the one that stood there previously, and whether the city planning commission abused its discretion as urged, which we answer in the negative.

Carefully considering all the evidence submitted to us in this appeal, two members of the court conclude that the use by relators of their land has not been restricted unreasonably by depriving them of the privilege of erecting the new garage on that land where they desire to erect it and allegedly intended to erect it at the time they applied for a permit or at the place they allege they applied for a permit to erect it. In our opinion, the city planning commission did not abuse its discretion in refusing to issue relators a permit to build such garage on the site of the old garage.

Finding no error prejudicial to relators in any of

the respects urged by them in their assigned grounds of error, oral arguments or brief, the judgment of the Court of Common Pleas must be, and hereby is, affirmed.

*Judgment affirmed.*

GRIFFITH, P. J., concurs.

NICHOLS, J., dissenting. Prior to the adoption of the zoning ordinance of the city of Campbell the relators were the owners of lot number 5001 and outlot number 48 in that city.

For more than twenty years prior to the adoption of the ordinance there existed upon lot 5001 a garage which constituted a nonconforming use.

The evidence clearly indicates that the garage which constituted such nonconforming use had become in a bad state of repair, and that the relators desired and intended to tear down the old garage and erect upon the foundation thereof a new garage using concrete blocks and covering the same with permastone.

There can be no question under the law that the relators had the right to maintain the old garage where it had remained on lot number 5001 for a long period of time before the adoption of the ordinance.

To me, it is clear from the evidence that relators orally applied to the building inspector for a permit to change the old garage from its dilapidated condition to a new and substantial and more beautiful structure. When Louis Cataland applied for a permit to do so the inspector asked him to bring in his tax certificates, which he did, and the inspector signed the name of one of the owners to a written application for a permit to build the garage 24 by 24 feet, but issued the permit for the erection thereof on outlot number 48. Outlot number 48 never had a garage on it. There

was no intent or desire of the relators to erect a garage on outlot number 48. Just why the inspector issued the permit for that outlot is a matter of conjecture.

The relators proceeded to erect the garage on the foundation of the old one on lot number 5001, and when the same was partially completed they were notified to remove the same, given a specific number of days to do so, and threatened with prosecution if they failed to comply with the order of removal. They failed to comply and an affidavit has been filed against them charging them with violation of the zoning ordinance.

The testimony shows that the relators, under the mistaken belief that the permit for the new structure granted them the right to construct the same on the old foundation, proceeded to do so.

It is clear that the inspector, in granting the oral application of the relators for the permit, acted under a mistake of fact, and that the relators acted under a mistake of fact in erecting the new garage on the lot for which the permit did not provide. Here was a mutual mistake on the part of the parties interested.

In my judgment the permit should have been corrected to conform to the application made therefor, to wit, for the reconstruction of the garage on lot number 5001, and that, as corrected, the relators would have been clearly entitled to the permit applied for by them.

I further find from the evidence that the zoning ordinance of the city of Campbell has no substantial relation to the public health or welfare of the city of Campbell as applied to the particular lot number 5001. There was an attempt by the city to show its relationship to the public health and welfare, but the only evidence introduced by the city upon that subject was to

the effect that the old garage, in its dilapidated condition, was detrimental to the aesthetic appearance of other properties on the street.

It seems to me that the residents of that street were well aware of the co-operative attitude of the relators in removing the old structure for the sole purpose of correcting the eyesore which had a tendency to affect the aesthetic character of the properties in the particular neighborhood. Indeed, I think there is no one, either city officials or residents of the community, who would not have agreed that the improvement contemplated by relators was desirable not only to them but to every resident and every official of the city of Campbell.

There can be no question that the relators had the right to repair the old garage so as to prevent it from becoming a fire hazard or otherwise endangering the residents of the city of Campbell, and in its repaired condition relators would have had the right to keep the garage on lot 5001 for all time; and it is only because of the mutual mistake of the inspector and of the relators that the garage has not now been reconstructed so as to eliminate any objection which could be made thereto from an aesthetic standpoint or otherwise.

In my opinion, a great injustice has been done to the relators in this case by the denial of the permit asked for by them. It would be very clear to me that if this were an action for a mandatory injunction to prevent the city from interferring with the reconstruction of the garage and from ordering the new garage torn down, and from filing the criminal charge above referred to, a court of equity would grant the prayer of such a petition under the evidence disclosed by the record in this case.

I therefore respectfully dissent from the judgment of the majority members of the court in this case.